**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | |
|---|---|
| APRIL DARRIN, *et al.*, on behalf of herself and all others similarly situated, | |
| Plaintiffs, | Case No. 4:23-cv-00053-JKW-DEM |
| v. | CLASS ACTION |
| HUNTINGTON INGALLS INDUSTRIES, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL AND TO**
**DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................ iv

FACTUAL BACKGROUND ......................................................................................................... 1

    A.   Overview of the Litigation.......................................................................................... 1

    B.   Mediation and Settlement........................................................................................... 3

    C.   The Terms of the Proposed Settlement ...................................................................... 3

         1.   The Settlement Class........................................................................................ 3

         2.   The Settlement Fund ........................................................................................ 4

         3.   Proposed Notice and Claims Program ............................................................. 5

         4.   Attorneys' Fees and Expenses and Service Awards......................................... 6

         5.   Releases............................................................................................................ 7

ARGUMENT ................................................................................................................................. 7

I.      ARTICLE III STANDING.................................................................................................. 7

II.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
        SETTLEMENT AND DIRECT NOTICE TO THE SETTLEMENT CLASS.................... 8

    A.   The Class Was Adequately Represented. ................................................................. 10

    B.   The Proposed Settlement Was Negotiated at Arm's Length. ................................... 11

    C.   The Relief Is Fair, Reasonable, and Adequate........................................................ 11

         1.   The costs, risk, and delay of trial and appeal................................................. 12

         2.   The method of distributing relief is effective. ............................................... 12

         3.   The terms relating to attorney's fees are reasonable...................................... 13

         4.   Any agreement required to be identified under Rule 23(e)(3)........................ 14

D.    The Proposed Settlement Treats Class Members Equitably. .......................................... 14

E.    Factors Traditionally Evaluated by Fourth Circuit Courts Weigh in Favor of Preliminary Approval. ....................................................................... 15

    1.    The Settlement Meets Traditional Criteria for Fairness. ..................................... 15

    2.    The Settlement Meets Traditional Criteria for Adequacy. ................................... 16

III.    THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION .................................................................................... 17

A.    The Rule 23(a) Requirements Are Satisfied. ................................................. 18

B.    The Rule 23(b)(3) Requirements Are Satisfied. ............................................ 19

IV.    THE COURT SHOULD APPROVE THE NOTICE PLAN, NOTICES, AND CLAIM FORM, AND APPOINT THE SETTLEMENT ADMINISTRATOR. ................ 21

V.    THE COURT SHOULD APPOINT CLASS COUNSEL. ................................................. 22

CONCLUSION ............................................................................................................. 23

APPENDIX A – TIMELINE OF SETTLEMENT EVENTS ....................................................... 24

CERTIFICATE OF SERVICE ........................................................................................ 27

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abubaker v. Dominion Dental USA, Inc.*,
  No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021)........................ 17, 18, 19, 20

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997). ..................................................... 17, 19, 20

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998). ........................ 19

*Brown v. Transurban USA, Inc.*, 318 F.R.D. 560 (E.D. Va. 2016). .......................... 10, 13, 15, 19

*Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006)......................................................... 18, 19

*Domonoske v. Bank of America, N.A.*, 790 F. Supp. 2d 466 (W.D. Va. June 14, 2011). ............. 15

*Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299 (4th Cir. 2013)............................................... 20

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).................................................................... 21

*Frank v. Gaos*, 139 S. Ct. 1041 (2019)........................................................................................... 7

*Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698 (4th Cir. 2011). ............................................ 20

*Hammond v. Bank of N.Y. Mellon Corp.*,
  No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010). ........................................... 16

*Huang v. Spector*, 142 S. Ct. 431 (2021). ................................................................................. 7, 18

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613 (4th Cir. 2018). ........................ 7

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
  No. 1:16-c-03025, 2019 WL 3183651 (D. Md. July 15, 2019). ............................................... 17

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018)............................... 18, 20

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021). ........... 7, 18

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020). ............................... 18, 19, 20

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013). ................................................................................................. 16

iv

*In re Jiffy Lube Secs. Litig.*, 927 F.2d 155 (4th Cir. 1991). ................................................ 9, 15, 16

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg.,*
  *Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020). ....................................... 10, 14

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  440 F. Supp. 3d 447 (D. Md. 2020). ..................................................................................... 8

*In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246 (E.D. Va. 2009). ..................................................... 9

*In re NeuStar, Inc. Sec. Litig.*,
  No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798 (E.D. Va. Sept. 23, 2015). .......................... 11

*J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019). ............................................................................. 7

*Jeffreys v. Commc'ns Workers of Am. AFL–CIO*, 212 F.R.D. 320 (E.D. Va. 2003). .................... 18

*L-3 Commc'ns Corp. v. Serco, Inc.*, 673 F. App'x 284 (4th Cir. 2016). ...................................... 8

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005). ........................................ 17

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950). .............................................. 21

*Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429 (11th Cir. 2012). ........................... 11

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). ............................................................ 21

*Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D 183 (E.D. Va. 2015). ....................................... 20

*Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267 (4th Cir. 2010). ........................................... 20

*Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499 (E.D. Va. June 8, 1995). ................... 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). .............................................................. 18

*Watkins v. Spector*, No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022). ............................... 7, 18

*Woodward v. NOR–AM Chem. Co.*,
  No. Civ-94-0870, 1996 WL 1063670 (S.D. Ala. May 23, 1996). ........................................... 17

**Statutes**

New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2, *et seq.*........................................ 3

**Other Authorities**

7AA Charles Wright, Arthur Miller & Mary Kay Kane,
    *Federal Practice and Procedure* § 1779 (3d ed. 2005). ........................................................ 20

Federal Judicial Center, "Judges' Class Action Notice and
    Claims Process Checklist and Plain Language Guide" (2010) ................................................ 21

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 16

Fed. R. Civ. P. 23 ........................................................................................................... 5, 9, 21, 22

Fed. R. Civ. P. 23(a). ........................................................................................................... 18

Fed. R. Civ. P. 23(b) ........................................................................................................... 18, 19, 20, 21

Fed. R. Civ. P. 23(c). ........................................................................................................... 21

Fed. R. Civ. P.  23(e). ........................................................................................ 1, 9, 11, 12, 14, 17, 21

Fed. R. Civ. P. 23(g). ........................................................................................................... 22

Fed. R. Civ. P. 56. ........................................................................................................... 16

Following nearly one year of intense litigation, and correspondingly hard-fought settlement negotiations, the Parties have reached a settlement to resolve all claims arising from the Data Breach announced by Defendant Huntington Ingalls Industries, Inc. ("HII" or "Defendant") in April of 2023 (the "Data Breach" or "Security Incident").[1] The Settlement creates a non-reversionary common fund of $725,000 to pay benefits to Settlement Class Members, including (1) reimbursement for Out-of-Pocket Losses and Lost Time; (2) Alternative Cash Payments; (3) Credit Monitoring Services; (4) notice and administration costs; (5) service award payments approved by the Court; and (6) attorney's fees and expenses awarded by the Court.

The Settlement is a strong result for the Settlement Class, securing valuable benefits while eliminating the risks of continued litigation. The Settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e). Plaintiffs thus move for an order preliminarily approving the Settlement, directing class notice, and scheduling a Final Approval Hearing. In support of their Motion, Plaintiffs submit the Settlement Agreement (attached as Exhibit 1 to the Declaration of Gary E. Mason ("Mason Decl.") filed herewith, with its attached sub exhibits: Ex. A, Claim Form; Ex. B, Long Notice; Ex. C, Postcard Notice; Ex. D, Proposed Preliminary Approval Order; Ex. E, Proposed Final Approval Order).

## FACTUAL BACKGROUND

**A.    Overview of the Litigation**

HII is a shipbuilder and government contractor based out of Newport News, Virginia. HII is frequently awarded military contracts and provides military support in multiple sectors,

---

[1] Huntington Ingalls Industries, Inc. is a holding company that owns (among other entities) HII Mission Technologies Corp., which is the HII subsidiary that was subject to the Incident. Accordingly, HII Mission Technologies Corp. is the proper defendant in this matter. The Parties have conferred, and Plaintiffs will promptly file an Amended Complaint to identify the proper party as the defendant. For ease of reference, "HII" will be used in this Motion.

including cybersecurity and analytics, and provides emergency and non-emergency medical transport services.

On or around March 24, 2022, HII identified a Security Incident that involved an unauthorized party who was not associated with HII engaging in an unauthorized activity involving certain file storage systems on one of its servers. HII's investigation of the Security Incident discovered that the information involved may have included names and Social Security numbers of current and former employees and likely a small number of employees' dependents or beneficiaries and independent contractors. Starting on April 18, 2023, HII began sending notices to affected individuals, including Plaintiffs April Darrin, Kenneth D. Keeler, Cheryl Soles, Tyler N. Beadle, and Bruce Snyder (collectively "Plaintiffs") and other persons similarly situated, notifying them of the Security Incident. In all, Defendant identified that approximately 43,656 putative Class Members' personally identifying information may have been compromised in the Security Incident.

After the firms representing Plaintiffs were each respectively retained by Plaintiffs, each firm conducted an initial, but extensive, investigation of the Breach and Defendant. Mason Decl. ¶ 11. Plaintiff Darrin filed a putative Class Action Complaint on April 27, 2023, in the United States District Court for the Eastern District of Virginia. ECF No. 1. Plaintiffs Keeler, Soles, and Beadle subsequently filed putative Class Action Complaints in the Eastern District of Virginia. ECF No. 12. On July 7, 2023, this Court consolidated all related actions, and on July 25, 2023, Plaintiffs filed a Consolidated Class Action Complaint (the "Complaint") and named Snyder as an additional Plaintiff. ECF Nos. 21, 25. In the Complaint, Plaintiffs assert claims against HII for negligence, negligence *per se*, breach of implied contract, breach of the implied

covenant of good faith and fair dealing, violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§ 57-12-2, *et seq*.), and declaratory judgment. ECF No. 25.

HII moved to dismiss the Complaint and the parties fully briefed that motion. Prior to a hearing on the motion to dismiss and recognizing the risks and continued costs of litigation, Plaintiffs and Defendant decided to engage in private, arm's-length negotiations with the assistance of a mediator to resolve all matters associated with the litigation. ECF No. 29; Mason Decl. ¶ 12.

### B.    Mediation and Settlement

On December 19, 2023, the Parties participated in a full-day mediation facilitated by an experienced JAMS mediator, Judge Wayne R. Andersen (Ret.). Mason Decl. ¶ 13. In preparation for this mediation, Plaintiffs requested and Defendant produced preliminary discovery, which included detailed information regarding HII's forensic investigation of the Security Incident; the number of individuals affected by state, overseas, and in total; the types of PII and any data potentially compromised in the Security Incident; the total number of individuals provided notice of the Security Incident; and the number of individuals that took advantage of the offer made by HII for complimentary identity monitoring services. *Id.* ¶ 14. After a full day of negotiations, the parties had not reached an agreement. *Id.* ¶ 15. Shortly thereafter, the Parties came to an agreement in principle, and later finalized the terms in this Settlement Agreement and the attached exhibits. *Id.* ¶ 16.

### C.    The Terms of the Proposed Settlement

The following are the material terms of the Settlement:

### 1.    <u>The Settlement Class</u>

The proposed Settlement Class is defined as follows:

"Settlement Class" means all individuals in the United States to whom HII sent a notice because some of their PII may have been accessed as a result of the Security Incident that occurred between approximately March and May 2022.

Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Litigation, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Security Incident or who pleads *nolo contendere* to any such charge. Ex. 1 § 4.1.29.

2. **The Settlement Fund**

HII will pay $725,000 into a non-reversionary Settlement common fund to pay benefits to Settlement Class Members, including (1) reimbursement for Out-of-Pocket Losses and Lost Time; (2) Alternative Cash Payments; (3) Credit Monitoring Services; (4) Costs of Claims Administration, including notice and administration costs; (5) service award payments approved by the Court; and (6) attorney's fees and expenses awarded by the Court. These Settlement benefits include:

- Reimbursement for Out-of-Pocket Losses and Lost Time. All Settlement Class Members may submit a claim for Out-of-Pocket Losses and Lost Time up to $5,000 per Settlement Class Member. The Settlement Fund will be used to pay valid and timely submitted claims for each of the following categories:
  - "Out-of-Pocket Losses" are unreimbursed costs or expenditures incurred by a Settlement Class Member in responding to, or that a Settlement Class Member believes plausibly arose from and that are fairly traceable to, the Security Incident that were incurred between March 24, 2022 and the Claims Deadline, as a result of the Security Incident. Out-of-Pocket Losses may include, without limitation, the following: (1) the unreimbursed costs, expenses, losses, or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal

information; (2) costs associated with accessing or freezing/unfreezing credit reports with any credit reporting agency; (3) other miscellaneous expenses incurred related to any valid Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and (4) the cost of credit monitoring or other mitigative costs.

   o  "Lost Time" means up to 4 hours of time spent remedying issues allegedly related to the Security Incident at a rate of $25 per hour. Settlement Class Members may submit claims for Lost Time by providing an attestation that the Settlement Class Member spent the claimed amount of time in response to the Security Incident. Claims for Lost Time are subject to the $5,000 Out-of-Pocket Loss cap.

- <u>Alternative Cash Payment</u>. Settlement Class Members may, in lieu of making a claim for reimbursement of Out-of-Pocket Losses and/or Lost Time, elect to receive a cash payment in an amount equal to $75 on a claims-made basis.

- <u>Credit Monitoring/Identity Theft Protection Services</u>. Settlement Class Members who submit a claim can elect to enroll in two (2) years of identity theft protection and credit monitoring services under the settlement that will include the following features: (1) dark web scanning with user notification if potentially unauthorized use of a Settlement Class Member's personal information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents. These services will be made available to all Settlement Class Members who choose to enroll regardless of whether they submit a claim for Out-of-Pocket Losses, Lost Time, or Alternative Cash Payment under the settlement. A unique redemption code, allowing Settlement Class Members to enroll in these services will be sent to each Settlement Class Member who submits a valid claim for such services within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later.

- <u>*Pro Rata* Increase or Decrease of Claims</u>. Claims for Out-of-Pocket Losses, Lost Time, and Alternative Cash Payments will be increased or decreased *pro rata* to fully exhaust the remaining amount of the Settlement Fund after payment for Credit Monitoring Services, Costs of Claims Administration (including notice and administration costs), service award payments approved by the Court, and attorney's fees and expenses awarded by the Court.

Ex. 1 § 4.2.

   **3.    Proposed Notice and Claims Program**

Class Counsel have retained, and request that the Court appoint, Simpluris as Settlement Administrator to provide notice to Class Members and to process claims. The Notice Program satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil

Procedure by drawing on the most efficient techniques used in commercial advertising to inform the Class and stimulate participation. Ex. 1 § 3.2. The Notice Program includes the dissemination of individual notice by Short Form Notice directly mailed to each Settlement Class Member for whom HII can ascertain a mailing address from its records with reasonable effort. *Id.* § 3.2.1. For Settlement Class Members for whom HII is not able to ascertain a mailing address from its records with reasonable effort, the Claims Administrator will use reasonable efforts to identify a mailing address and mail the Short Form Notice to such address. *Id.* And if any Short Form Notices are returned undeliverable, the Claims Administrator will use reasonable efforts to identify updated mailing addresses and resend the Short Form Notice to the extent updated addresses are identified. *Id.* The Notice Program also includes the publication of a Long Form Notice on a dedicated settlement website (the "Settlement Website"). *Id.* §§ 3.2.2–3.2.3; Ex. C to Ex.1.

The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the ability to file claims electronically on the Settlement Website or by mail; and the establishment and maintenance of a Toll-Free Help Line for Settlement Class Members to call with settlement-related inquiries, with the option to leave a message and request a call back, with such calls being returned within twenty-four (24) hours. *Id.* §§ 3.2.3–3.2.4; Claim Form, Ex. A to Ex. 1.

### 4. <u>Attorneys' Fees and Expenses and Service Awards</u>

Class Counsel may separately move for a fee not to exceed 33.33% of the Settlement Fund and reimbursement of litigation expenses in an amount not to exceed $25,000.00, subject to Court approval. *Id*. § 7.2. Class Counsel may also request service awards of up to $5,000 each for the four Settlement Class Representatives. *Id*. § 7.3. Counsel for Plaintiff negotiated their fees and

costs separate from the benefit to Class Members and only after agreeing to the terms of the Settlement on behalf of the Class. Mason Decl. ¶ 23.

**5.** **Releases**

The Settlement Class will release HII and all Related Entities from claims that were or could have been asserted in this case. *Id.* §§ 1.23–1.25.

## ARGUMENT

## I.    ARTICLE III STANDING

As a preliminary consideration, the Court has an initial obligation to assure itself of the Plaintiffs' "standing under Article III," which "extends to court approval of proposed class action settlements." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (per curiam). "[O]nly one named plaintiff must have standing as to any particular claim in order for it to advance." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), *and cert. denied sub nom. Watkins v. Spector*, No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022). The Court need not determine whether absent settlement class members have standing to have jurisdiction to approve a settlement. *J.D. v. Azar*, 925 F.3d 1291, 1324 (D.C. Cir. 2019); *see also Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018) (In a class action, "we analyze standing based on the allegations of personal injury made by the named plaintiffs.") (internal quotation marks omitted).

The Court should readily conclude that it has jurisdiction over the Settlement because the Settlement Class Representatives have established standing to sue. As to the injury-in-fact requirement, Plaintiffs have alleged both actual *impending* misuse and *actual* access to their personal data resulting from the Data Breach. ECF No. 25.

District Courts in the Fourth Circuit have already established that allegations of "(1) an imminent risk of injury of identity theft; (2) time and money expended to protect against identity theft; (3) loss of property value in their personal identifying information; and (4) loss of the benefit of their bargain [….]" are sufficient to satisfy the remaining elements of standing. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 457 (D. Md. 2020). Here, Plaintiffs have alleged that all Plaintiffs face an imminent risk of injury from identity theft, spent time and money to protect against identity theft, suffered a loss of property value in their personal identifying information, and lost the benefit of their bargain. ECF No. 25 ¶¶ 21–44, 182.

Further, Settlement Class Representatives have alleged facts supporting their claim that HII breached an implied contract with Settlement Class Representatives and Settlement Class Members to provide reasonable data security. *Id.* ¶¶ 169–77. This alone is sufficient to provide standing to the Settlement Class Representatives and thus to invoke the Court's subject matter jurisdiction to approve the Settlement.[2] *See L-3 Commc'ns Corp. v. Serco, Inc.*, 673 F. App'x 284, 289 (4th Cir. 2016) ("[B]y alleg[ing] the existence of a contract, express or implied, and a concomitant breach of that contract, [the plaintiff's] complaint adequately show[ed] an injury to her rights for purposes of standing.") (citation and quotations omitted); *see also id.* ("[W]hether a plaintiff ultimately recovers the damages he seeks is a question better left to the applicable substantive law rather than a standing inquiry under Article III.") (citation and quotations omitted).

## II.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AND DIRECT NOTICE TO THE SETTLEMENT CLASS

When binding absent class members—as contemplated by the Settlement here—the Court "must direct notice in a reasonable manner to all class members who would be bound by the

---

[2] Because Article III standing exists for the implied contract claims, the Court need not reach the standing question with respect to the other claims.

proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2)" by finding that the Settlement is "fair, reasonable, and adequate"; and (ii) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)–(2). In determining whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

    (A)   the class representatives and class counsel have adequately represented the class;

    (B)   the proposal was negotiated at arm's length;

    (C)   the relief provided for the class is adequate, taking into account:

        (i)   the costs, risks, and delay of trial and appeal;

        (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv)   any agreement required to be identified under Rule 23(e)(3); and

    (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Historically, and prior to the 2018 amendment of the Federal Rules, the Court's Rule 23(e) obligations were addressed with a "two-level analysis" that largely overlaps with Rule 23. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). To determine whether a settlement is fair, the Court considers the four factors set forth by the Fourth Circuit in *Jiffy Lube*: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991). To determine whether a settlement is adequate, the courts also look to: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely

to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*

Evaluation under both these factors and those enumerated in Rule 23 confirms that the proposed Settlement is fair, adequate, and reasonable; accordingly, the Court should issue notice of the Settlement to the Settlement Class.

### A. The Class Was Adequately Represented.

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted). Here, the Settlement Class Representatives have the same interests as other Class Members as they are asserting the same claims and share the same injuries. The Settlement Class Representatives actively participated in the litigation including, at all times, regularly maintaining contact with counsel, assisting in the investigation of the case, reviewing their respective Complaint(s), producing information and documentation to Class Counsel, remaining available for consultation throughout the mediation and settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions. Mason Decl. ¶ 22.

Further, the Court has already recognized Class Counsel's experience and qualifications in appointing them to lead this litigation and the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. ECF No. 21 at 3–5; Mason Decl. ¶¶ 3–16; *see also In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

**B.     The Proposed Settlement Was Negotiated at Arm's Length.**

The Court can safely conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the Parties' briefing and argument of numerous legal issues; the Parties' vigorous pursuit of facts (including independent investigation and the exchange of informal discovery); the length and difficulty of the negotiations; and the involvement of an experienced mediator, Judge Wayne R. Andersen (Ret.). Mason Decl. ¶¶ 12–16; *see also In re NeuStar, Inc. Sec. Litig.*, No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (adversarial encounters support a finding of arm's-length negotiations).

**C.     The Relief Is Fair, Reasonable, and Adequate.**

The relief offered to Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C). Settlement Class Members are entitled to benefits to be paid from a $725,000 non-reversionary Settlement Fund that are tailored to the relief sought through the litigation: recovery of up to $5,000 in Out-of- Pocket Losses and for Lost Time spent dealing with the Security Incident; and two years of Identity Defense Services to help detect and remediate potential identity theft and fraud. Moreover, the overall value of the Settlement is well within the range of data breach class action settlements approved across the country. *See* Mason Decl. ¶ 20.

Class Counsel, a group with extraordinary experience in leading data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. Mason Decl. ¶¶ 17–20. The Court may rely upon such experienced counsel's judgment. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (quotation omitted).

That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

**1.    <u>The costs, risk, and delay of trial and appeal.</u>**

Plaintiffs faced significant risks and costs should they continue to litigate the case. First, there was a risk that Plaintiffs' claims would not have survived, or survived in full, the fully briefed motion dismiss. Second, even if Plaintiffs had defeated the pending motion to dismiss, Plaintiffs still would have faced significant risks, costs, and delays from discovery, class certification, a likely motion for summary judgment, trial, and likely interlocutory and post judgment appeals.

In contrast to the risks, costs, and delay posed by the pending motions and possible appeals and trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class without delay. It ensures that Settlement Class Members with valid claims for Out-of-Pocket Losses or Lost Time will receive guaranteed compensation and provides Settlement Class Members with access to credit monitoring services, benefits that may not have been available at trial.

The substantial costs, risk, and delay of a further litigation support a finding that the proposed Settlement is adequate.

**2.    <u>The method of distributing relief is effective.</u>**

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which will be provided to all Settlement Class Members, and which lays out the benefits to which they are entitled.

As an initial matter, the Notice Program advising the Settlement Class of the available relief will be efficient and effective. The Notice Program includes the dissemination of individual

12

notice by short form notice (via direct mail) and the publication of a long form notice on the Settlement Website. Ex. 1 § 3.2; Ex. C to Ex.1.

Therefore, Settlement Class Members will receive effective and efficient notice of the relief, including, (1) reimbursement for fairly traceable Out-of-Pocket Losses and Lost Time; (2) Alternative Cash Payments; (3) Credit Monitoring Services; and (4) a *pro rata* increase or decrease to consume the remaining amount of the Settlement Fund after payment of all additional expenses. Ex. 1 § 2. Settlement Class Members who submit a Claim Form can then receive payment of their claim via check by mail, or via PayPal, Zelle, Venmo, or such other electronic payment platform deemed efficient and appropriate by the Claims Administrator. Ex. 1 § 2.7.5.

Because Settlement Class Members may make claims through a simple online form or by mail, the method of distributing relief is both efficient and effective and the proposed Settlement is adequate under this factor.

### 3.    **The terms relating to attorney's fees are reasonable.**

Class Counsel will request a fee expressed as a percentage of the value conferred by the Settlement on the Settlement Class, and for reimbursement of expenses incurred in prosecuting and settling this case. Ex. 1 § 7.2. Where, as here, a class settlement creates a non-reversionary common fund, fees are awarded on a "percentage of the fund" approach. *See, e.g.*, *Transurban*, 318 F.R.D. at 575. In the settlement negotiations, attorney's fees were not discussed in any manner until the Parties had reached agreement on the material terms of the Settlement, including the amount of the Settlement Fund. *Id.* ¶ 7.1; Mason Decl. ¶ 23. HII has agreed not to oppose any request for fees not in excess of 33.33 percent of the common fund, but the ultimate fee award will be determined by the Court's discretion, based on an application in accordance with Fourth Circuit law which provides an opportunity for comment from Settlement Class Members. Ex. 1 ¶ 7.2.

Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award. *Id.* ¶ 7.6. Accordingly, at this stage, the Court can and should conclude that it is likely to approve the Settlement for purposes of sending notice to the Settlement Class, even if it has not yet concluded whether and in what amount it would award attorney's fees and expenses.[3] The proposed Settlement is adequate under this factor.

### 4. Any agreement required to be identified under Rule 23(e)(3).

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal," and that the Court must then take into account any such agreements when determining whether the relief provided in the settlement is adequate. *See* Fed. R. Civ. P. 23(e)(2)–(3). Here, there is no such agreement. As such, this factor weighs in favor of finding that the Proposed Settlement is adequate.

### D. The Proposed Settlement Treats Class Members Equitably.

Finally, the proposed Settlement treats all Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members will have the same opportunity to file a claim for Out-of-Pocket Losses and Lost Time; this means that monetary compensation will be apportioned in accordance with each claimant's injury. Ex. 1 § 2. In the event claims exceed or fail to consume the available funds, all claims will be accordingly reduced or increased *pro rata*, with no Settlement Class Member obtaining any greater relative benefit over another. *Id.* This factor likewise supports a finding that the Court will be able to approve the proposed Settlement and that class notice is appropriate.

---

[3] Similarly, Class Counsel will request service awards of $5,000 for each of the Settlement Class Representatives. Service awards of this size are reasonable. *See In re Lumber Liquidators Chinese-Manufactured Flooring*, 2020 WL 5757504, at *3 (granting service award of $5,000). The Settlement Agreement is not conditioned on the Court's approval of this request. *Id.*

E.  **Factors Traditionally Evaluated by Fourth Circuit Courts Weigh in Favor of Preliminary Approval.**

1.  **The Settlement Meets Traditional Criteria for Fairness.**

Factors set forth by the Fourth Circuit in *Jiffy Lube* pertaining to the fairness of a given settlement support preliminary approval here. *See In re Jiffy Lube Secs. Litig.*, 927 F.2d at 158–59.

*First,* the posture of the case supports approval of Settlement. Though early in litigation, Plaintiffs have conducted an extensive investigation of the claims, both Parties have fully evaluated and briefed issues on a motion to dismiss, and significant informal discovery was exchanged both prior to and during the mediation that allowed the Parties to fully evaluate the claims, defenses, and litigation risks at issue. Mason Decl. ¶ 13.

*Second,* the extent of discovery conducted supports approval. Such discovery includes a pre-mediation exchange of information including detailed information regarding HII's forensic investigation of the Security Incident; the number of individuals affected by state, overseas, and in total; the types of PII and any data potentially or actually compromised in the Security Incident; the total number of individuals provided notice of the Security Incident; and the number of individuals that took advantage of any offer made by HII for complimentary identity monitoring services. *Id.* Extensive formal discovery is not a necessary prerequisite to approval. *See Domonoske v. Bank of America, N.A.*, 790 F. Supp. 2d 466, 473 (W.D. Va. June 14, 2011) (finding "burdensome, expensive discovery that seems to plague so many class actions" unnecessary to support approval where case is straightforward and the record was adequately developed).

*Third,* the arm's-length and adversarial nature of negotiations—which took place with the assistance of third-party mediator and retired federal judge Hon. Wayne Andersen—supports

approval of Settlement. *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 571–72 (E.D. Va. Sept. 29, 2016) (the use of mediator supports a finding of arm's-length negotiations).

*And finally,* the extensive experience of counsel supports a finding of fairness. Counsel here has deep experience in both class actions generally and data breach class actions in particular, and support the Settlement as fair, reasonable, and adequate. Mason Decl. ¶¶ 3–9, 17; Exs. 2, 3, and 4; *see Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501–02 (E.D. Va. June 8, 1995) (opining class counsels' "wealth of experience and knowledge" supported a finding a fairness).

### 2.    The Settlement Meets Traditional Criteria for Adequacy.

An analysis of factors pertaining to the adequacy of a settlement also support preliminary approval here. *See In re Jiffy Lube Secs. Litig.*, 927 F.2d at 158–59.

The first, second, and third factors traditionally considered by Fourth Circuit courts pertaining to adequacy—the relative strength of plaintiff's case on the merits, the existence of difficulties presented by proof and/or defenses, and the anticipated duration and expense of additional litigation—all support a finding of adequacy. While Plaintiffs strongly believe in the merits of their case, they also understand that Defendant will assert a number of potentially dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleadings stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). While Plaintiffs here have successfully avoided dismissal thus far, class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293

F.R.D. 21 (D. Me. 2013). Moreover, while early settlement has allowed costs to stay modest, and the Settlement Agreement provides for such costs to paid for separate and apart from the funds available to the Class—protracted litigation would only serve to increase costs and have a potentially negative affect on class recovery, which is itself far from certain. Continued litigation would also increase the burden on the Court, without any guaranteed benefit to Plaintiffs or Settlement Class Members. "Complex litigation . . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Woodward v. NOR–AM Chem. Co.*, No. Civ-94-0870, 1996 WL 1063670, at \*21 (S.D. Ala. May 23, 1996) (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)). Where a settlement, like here, "will alleviate the need for judicial exploration of . . . complex subjects [and] reduce litigation costs," this factor weighs in favor of approval. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

The *fourth* factor traditionally considered by Fourth Circuit Courts—the solvency of the defendants and the likelihood of recovery on a litigated judgment—has not been placed at issue here and thus neither weighs for or against approval of settlement.

*And finally,* there has been no opposition to the Settlement. While this factor will be re-examined at final approval, after notice has issued to the Class and Settlement Class Members have had an opportunity to respond, it currently weighs in favor of a finding of adequacy.

## III.  THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION.

To issue notice, the Court should decide it will "likely be able to . . . certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1)(B); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Such a decision should not be difficult here. Settlement classes are routinely certified in similar consumer data breach cases. *See, e.g., Abubaker v. Dominion Dental USA, Inc.*, No.

1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) (Brinkema, J.); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 1:16-c-03025, 2019 WL 3183651 (D. Md. July 15, 2019); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), *and cert. denied sub nom. Watkins v. Spector*, No. 21- 638, 2022 WL 89334 (U.S. Jan. 10, 2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018). There is nothing different about this case, which is demonstrated by examining the requirements of Rule 23(a) and (b).

### A.    The Rule 23(a) Requirements Are Satisfied.

*Numerosity:* The proposed Settlement Class consists of approximately 43,656 putative Class Members, indisputably rendering individual joinder impracticable. *See Jeffreys v. Commc'ns Workers of Am. AFL–CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003) (noting that "where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

*Commonality:* "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" such that all their claims "can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350 "Even a single common question will do." *Id.* at 359 (internal quotations omitted). All Settlement Class Members suffered the same injury—theft of their personal data in the Data Breach—and are asserting the same legal claims. Accordingly, common questions of law and fact abound. *See, e.g.*, *Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *11–12; *Anthem*, 327 F.R.D. at 309.

***Typicality:*** Typicality under Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class . . . " *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (citation and quotations omitted). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466–67. This requirement is readily satisfied in data breach cases. The Settlement Class Representatives' claims are typical of other Settlement Class Members because they all arise from the Security Incident and involve the same overarching legal theories, including the theories that HII breached its common law, statutory and contractual duties to protect Settlement Class Representatives' and Class Members' personal information. *See, e.g.*, *Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *12.

***Adequacy of Representation:*** "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Settlement Class Representatives do not have any interests antagonistic to other Class Members and, as previously recognized by this Court, have retained lawyers who are abundantly qualified and experienced, satisfying the adequacy requirement. ECF No. 21 at 3–5.

## B.    The Rule 23(b)(3) Requirements Are Satisfied.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." One

part of the superiority analysis—manageability—is irrelevant for purposes of certifying a settlement class. *Transurban*, 318 F.R.D. at 569.

**Predominance:** Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance inquiry measures the relative weight of the common questions as against individual ones. *Amchem*, 521 U.S. at 624. "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 305 (4th Cir. 2013)). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by HII. *See, e.g.*, *Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *13; *Anthem,* 327 F.R.D. at 311–16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312.

**Superiority:** "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." 7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005). Litigating the same claims of 43,656 persons through individual litigation would obviously be inefficient.

The superiority requirement thus is satisfied. *See Equifax*, 2020 WL 256132, at *14; *Anthem*, 327 F.R.D. at 315–16.

## IV.    THE COURT SHOULD APPROVE THE NOTICE PLAN, NOTICES, AND CLAIM FORM, AND APPOINT THE SETTLEMENT ADMINISTRATOR.

To satisfy the requirements of both Rule 23 and due process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly requires that notice be reasonably disseminated to those who would be bound by the court's judgment. Fed. R. Civ. P. 23(e)(1). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Plaintiffs request that the Court appoint Simpluris as the Settlement Administrator and approve the Notice Plan outlined in the Settlement Agreement. *Supra* Factual Background § C.3. The Notice Plan is uncomplicated and, when implemented, will provide the best notice practicable under the circumstances. *See also* Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class).

The Court should also approve the proposed forms of notice attached as Exhibits B and C to Exhibit 1 ("Notices"), which satisfy all the criteria of Rule 23. The Notices are clear, straightforward, and provide persons in the proposed Settlement Class with enough information to evaluate whether to participate in the Settlement. The Notices also advise the proposed Settlement Class how to exclude themselves from the Settlement and how to object to the Settlement,

including the requested attorney's fees and costs. Thus, the Notices satisfy the requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

Finally, the Court should approve the Claim Form attached as Exhibit A to Exhibit 1. The Claim Form is written in plain language and can be submitted online or printed and mailed to the Settlement Administrator.

<h2 style="text-align:center;">V.    <u>THE COURT SHOULD APPOINT CLASS COUNSEL.</u></h2>

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

The Court previously appointed Gary Mason of Mason LLP, Scott Edward Cole of Cole & Van Note and Raina Borrelli of Turke & Strauss LLP as co-lead interim class counsel. ECF No. 21 at 3–5. Throughout this case, Lead Counsel have demonstrated the hard work, legal scholarship, experience, and resources they bring to bear, ultimately resulting in the Settlement now before the Court. Mason Decl. ¶¶ 10–16, 24. The Court should thus appoint them as Class Counsel under Rule 23(g).

## **CONCLUSION**

For the reasons set forth set forth above, Plaintiffs request the Court enter the order proposed by the Parties directing the Settlement Class be notified of the proposed Settlement in the manner set forth in the Notice Plan and schedule a Final Approval Hearing.

## APPENDIX A – TIMELINE OF SETTLEMENT EVENTS

For convenience, proposed dates and deadlines leading to a Final Approval Hearing are provided below and in the proposed order separately submitted to the Court.

| Event | Timing |
|---|---|
| Deadline for Defendant to provide Settlement Class List to Claims Administrator pursuant to the Settlement Agreement | [10 days after entry of this Order] |
| Notice Program Commencement ("Class Notice Date") | [30 days after entry of this Order] |
| Deadline for Class Counsel to file motion for attorneys' fees, costs, expenses and service awards | [21 days before Objection Deadline and Opt-Out Deadline] |
| Objection Deadline | [75 days after the Class Notice Date] |
| Opt-Out Deadline | [75 days after the Class Notice Date] |
| Claims Deadline | [90 days after the Class Notice Date] |
| Deadline for Plaintiffs to file motion for final approval of settlement and responses to any timely submitted Class member objections, which shall include a declaration from the Claims Administrator confirming execution of and compliance with its obligations in the Settlement Agreement as of the date of the declaration and identifying all Settlement Class Members who submitted timely requests for exclusion | [21 days prior to Final Approval hearing] |
| Final Fairness Hearing | _____, 2024 at __: __ _.m. in Courtroom ____<br>[No earlier than (i) 100 days after Defendant notifies the appropriate government officials pursuant to Class Action Fairness Act, 28 U.S.C. § 1715(d) or (ii) 60 days after the Claims Deadline, whichever is later] |

Dated: February 9, 2024

Respectfully submitted,

*/s/David Hilton Wise*

David Hilton Wise, VA Bar No. 30828
Joseph M. Langone, VA Bar No. 43543
**WISE LAW FIRM PLC**
10640 Page Avenue, Suite 320
Fairfax, Virginia 22030
Tel: (703) 934-6377
dwise@wiselaw.pro
jlangone@wiselaw.pro

Steven T. Webster, VA Bar No. 31975
**WEBSTER BOOK LLP**
300 N. Washington Street, Suite 404
Alexandria, Virginia 22314
Tel: (888) 987-9991
swebster@websterbook.com

*Plaintiffs' Local Counsel*

Scott Edward Cole
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, CA 94607
Tel: (510) 891-9800
sec@colevannote.com

Gary E. Mason
**MASON LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
gmason@masonllp.com

Raina Borrelli
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
Tel: (608) 237-1775
raina@turkestrauss.com

Kenneth J. Grunfeld
**KOPELOWITZ OSTROW FERGUSON**
**WEISELBERG GILBERT**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel: (954) 332-4200
grunfeld@kolawyers.com

*Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/David Hilton Wise*

David Hilton Wise, VA Bar No. 30828
**WISE LAW FIRM PLC**