**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| APRIL DARRIN, *et al*., on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br><br>HUNTINGTON INGALLS INDUSTRIES,<br><br>                              Defendant. | Case. No. 4:23-cv-00053-JKW-DEM<br><br>CLASS ACTION |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

i

**TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 1

II.     THE CLASS ACTION SETTLEMENT AND NOTICE PROGRAM ......................... 2

     A.    The Settlement Class........................................................................................... 2

     B.    *The Settlement Provides Significant and Meaningful Relief to Affected Class Members*.............................................................................................................. 3

     C.    The Settlement Administrator Provided Direct Notice to Settlement Class Members ............................................................................................................... 4

     D.    There Have Been No Objections and Minimal Opt-Outs .................................... 5

III.    ARGUMENT................................................................................................................. 5

     A.    Article III Standing ............................................................................................. 5

     B.    The Settlement Class Continues to Merit Certification ...................................... 6

     C.    The Court Should Grant Final Approval of the Settlement. ................................ 7

     D.    The Court-Ordered Notice Program is Constitutionally Sound and Has Been Fully Implemented .............................................................................................. 8

     E.    The Requested Attorneys' Fees and Expenses are Reasonable ........................... 9

     F.    The Proposed Service Awards are Reasonable.................................................... 9

IV.     CONCLUSION........................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Berry v. Schulman,*
   (4th Circ. 2015) 807 F.3d 600 ........................................................................... 13

*Brown v. Lowe's Companies, Inc.,*
   (W.D.N.C. Nov. 1, 2016) 2016 WL 6496447 ..................................................... 12

*Frank v. Gaos,*
   (2019) 139 S. Ct. 1041 ......................................................................................... 8

*Hanlon v. Chrysler Corp.,*
   (9th Cir. 1998) 150 F.3d 1011 ........................................................................... 10

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.,*
   (4th Cir. 2018) 892 F.3d 613 ............................................................................... 8

*In re Cap. One Consumer Data Sec. Breach Litig.,*
   (E.D. Va. Sept. 13, 2022) 2022 WL 18107626.................................................... 10

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
   (11th Cir. 2021) 999 F.3d 1247 ........................................................................... 8

*In re Jiffy Lube Securities Litigation,*
   (4th Cir. 1991) 927 F.2d 155 ............................................................................. 10

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,*
   (D. Md. 2020) 440 F. Supp. 3d 447 ..................................................................... 9

*Kruger v. Novant Health, Inc.,*
   (M.D.N.C. Sept. 29, 2016) 2016 WL 6769066.................................................... 12

*L-3 Commc'ns Corp. v. Serco, Inc.,*
   (4th Cir. 2016)  673 F. App'x 284 ........................................................................... 9

*Nelson v. Mead Johnson & Johnson Co.,*
   (11th Cir. 2012) 484 F. App'x 429 ......................................................................... 11

*Phillips Petroleum Co. v. Shutts,*
   (1985) 472 U.S. 797.................................................................................................. 11

*Scott v. Fam. Dollar Stores, Inc.,*
   (W.D.N.C. Mar. 14, 2018) 2018 WL 1321048........................................................ 12

**Rules**

Federal Rules of Civil Procedure Rule 23 (e)(2) ........................................................... 10

Representative Plaintiffs April Darrin, Kenneth Keeler, Cheryl Soles, Tyler Beadle, and Bruce Snyder ("Plaintiffs"), individually and on behalf of the Settlement Class Members, submit this Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement. Along with final approval of the class action settlement, Plaintiffs asks the Court to enter an Order for a reasonable service award to Representative Plaintiffs and to also award attorneys' fees and costs.

## I.   INTRODUCTION

Plaintiffs filed this Class Action against Defendant Huntington Ingalls Industries ("HII" or "Defendant") alleging that HII failed to properly secure and safeguard Plaintiffs and Class Members' personally identifiable information ("PII") stored within Defendant's file storage system on its internal computer network. Plaintiffs also alleged that Defendant is responsible for the harms it caused and will continue to cause Plaintiffs and the at least 43,656 other similarly situated persons affected by the massive and preventable cyberattack purportedly discovered by Defendant between March and May 2022. Plaintiffs allege that, in that attack, cybercriminals infiltrated Defendant's inadequately protected network servers and accessed highly sensitive PII which was kept unprotected (the "Data Breach"). Furthermore, Plaintiffs sought to hold Defendant responsible for not ensuring that their PII was maintained in a manner consistent with industry and other relevant standards. HII denied each of Plaintiffs' allegations and asserted several defenses, including that Plaintiffs lacked Article III standing.

After roughly a year of litigation, Plaintiffs and HII entered into a Settlement Agreement and Release ("Settlement Agreement" or "Settlement"). ECF 43-2. The proposed Settlement will afford significant relief to the Settlement Class Members, if approved. Under the terms of the proposed Settlement, HII will pay $725,000 into a non-reversionary Settlement common fund to

pay benefits to Settlement Class Members, including (1) reimbursement for Out-of-Pocket Losses and Lost Time up to $5,000 per Settlement Class Member, (2) Alternative Cash Payments; (3) Credit Monitoring Services, (4) Costs of Claims Administration, including notice and administration costs, (5) service award payments approved by the Court, and (6) Attorneys' Fees and expenses as awarded by the Court.

The Court preliminarily approved the Settlement Agreement on March 15, 2024 and ordered notice to the Settlement Class. ECF 50. The Settlement Administrator issued notice to the Class and has received no objections. In total, the Settlement Administrator received 838 claims from Class Members, and only one Class Member opted out.

For these reasons and the others explained below, the proposed Settlement satisfies Federal Rules of Civil Procedure Rule 23(e)(2)'s requirements that a class settlement be fair, reasonable, and adequate, and Plaintiffs respectfully request that the Court issue final approval of the Settlement. Plaintiffs and Class Counsel further request that the Court approve reasonable service awards of $5,000 to each Class Representative and attorneys' fees of $241,666.67 and litigation expenses of $19,703.76.

## II.    THE CLASS ACTION SETTLEMENT AND NOTICE PROGRAM

### A.  The Settlement Class

Under the Settlement Agreement, the parties agreed to resolve the claims of a nationwide class ("Settlement Class") defined as:

> [A]ll individuals in the United States to whom HII sent a notice because some of their PII may have been accessed as a result of the Data Breach that occurred between approximately March and May 2022.

Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Litigation, any members of the Judges' respective staffs, and immediate members of the

Judges' respective families, (2) officers, directors, members and shareholders of Defendant, (3) persons who timely and validly request exclusion from the Settlement Class and the successors and assigns of any such excluded persons, and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Breach or who pleads nolo contendere to any such charge. (Settlement § 1.29.) Defendant represents that the Settlement Class contains approximately 43,656 individuals. ECF 43.

### B. The Settlement Provides Significant and Meaningful Relief to Affected Class Members

The proposed class action Settlement provides for a non-reversionary cash common fund of $725,000 ("The Fund"), which will pay all Attorneys' Fees, settlement costs (notice, fees, administration), and provide for three separate forms of relief to the approximately 43,656 Class Members: (1) reimbursement for fairly traceable Out-of-Pocket Losses and Lost Time, (2) Alternative Cash Payments, and (3) Credit Monitoring Services. Following the payment of the initial claims, and all expenses, the remaining funds will be distributed on a pro rata basis to the participating Class Members. Representative Plaintiffs achieved the proposed Settlement after the parties produced preliminary discovery, which included detailed information regarding HII's forensic investigation of the Data Breach, the number of individuals affected by state, overseas, and in total; the types of PII and any data potentially compromised in the Data Breach; the total number of individuals provided notice of the Data Breach; and the number of individuals that took advantage of the offer made by HII for complimentary identity monitoring service.

The relief provided by the proposed Settlement is significant. Indeed, the claims process allows each Class Member who submits a claim to recover a sizeable amount of the net funds, thus allowing Class Members to collect complete relief for their damages. Thus, the Settlement was a

complete success. Class Counsel has permitted all Class Members an opportunity to get the full value of their damages. And, quite importantly, the Settlement will deliver relief to the Settlement Class Members far sooner than with further costly and wholly uncertain litigation.

### C. The Settlement Administrator Provided Direct Notice to Settlement Class Members

In its Preliminary Approval Order, the Court approved the proposed notice plan and ordered that the Class Notice be sent to Settlement Class Members by Settlement Administrator Simpluris, Inc. ("Simpluris"). Declaration of Christopher Leung ("Leung Decl."). Consistent with the Court's Preliminary Approval Order, Simpluris used the class list provided by Defendant. Leung Decl., ¶ 3. Among other things, this data included the Class Members' names and contact information. Through these records, Simpluris identified and compiled a final class list that "contained 43,080 unique records of Class Members, including 42,905 Class Members with valid physical mailing addresses and 175 Class Members with invalid physical mailing addresses." Leung Decl., ¶ 4.

"On April 12, 2024, Simpluris mailed the Postcard Notice to 42,905 Class Members. As of July 12, 2024, a total of 7,149 Postcard Notices have been returned by USPS. For the Postcard Notices returned without a forwarding address, Simpluris performed an advanced address search (*i.e.*, skip trace) on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. Simpluris used the Settlement Class Member's name and previous address to locate a more current address. Of the 7,149 returned Postcard Notices, 6,291 Postcard Notices were re-mailed to either a newfound address or a forwarding address provided by USPS, and 858 Postcard Notices were determined to be undeliverable because no updated address was found in a skip trace." *Id.*, ¶ 5. This represents a 98% success rate, an excellent result. *Id.*

4

To date, Class Members have submitted 827 Online Claim Forms and 11 Paper Claim

Forms. The deadline to submit a claim was July 13, 2024. *Id.*, ¶ 24.

### D. There Have Been No Objections and Minimal Opt-Outs

No Class Member has objected to the Settlement, and only one Class Member has opted

out. *Id.*, ¶ 9. This very small opt-out rate illustrates the success of the Settlement Notice program

and Class Members' satisfaction with the Settlement result.

### III.    ARGUMENT

#### A. Article III Standing[1]

As a preliminary consideration, the Court has an initial obligation to assure itself of the

Plaintiffs' "standing under Article III," which "extends to court approval of proposed class

action settlements." *Frank v. Gaos* (2019) 139 S. Ct. 1041, 1046 (per curiam). "On the other

hand, only one named plaintiff must have standing as to any particular claim in order for it to

advance." *In re Equifax Inc. Customer Data Sec. Breach Litig.* (11th Cir. 2021) 999 F.3d 1247,

1261, *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), *and cert. denied sub nom.*

*Watkins v. Spector*, No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022). Thus, to assure itself of

its jurisdiction to approve the Settlement, the Court must find that at least one Settlement Class

Representative has "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.* (4th Cir. 2018) 892 F.3d 613, 619 (4th Cir.

2018) (citation omitted).

District Courts in the Fourth Circuit have already established that allegations of "(1) an

imminent risk of injury of identity theft; (2) time and money expended to protect against identity

---

[1] This section is largely borrowed from Plaintiffs' Motion for Preliminary Approval (ECF 50).

theft; (3) loss of property value in their personal identifying information; and (4) loss of the benefit of their bargain […]" are sufficient to satisfy the remaining elements of standing. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.* (D. Md. 2020) 440 F. Supp. 3d 447, 457. Here, Plaintiffs have alleged that all Plaintiffs face an imminent risk of injury from identity theft, spent time and money to protect against identity theft, suffered a loss of property value in their personal identifying information, and lost the benefit of their bargain. ECF 25, ¶¶ 21-44, 182.

Further, Settlement Class Representatives have presented evidence supporting their claim that HII breached an implied contract with Settlement Class Representatives and Settlement Class Members to provide reasonable data security. *Id.*, ¶¶ 169-177. This alone is sufficient to provide standing to the Settlement Class Representatives and thus to invoke the Court's subject matter jurisdiction to approve the Settlement.[2] *L-3 Commc'ns Corp. v. Serco, Inc.* (4th Cir. 2016) 673 F. App'x 284, 289 ("[B]y alleg[ing] the existence of a contract, express or implied, and a concomitant breach of that contract, [the plaintiff's] complaint adequately show[ed] an injury to her rights for purposes of standing.") (citation and quotations omitted); *see also id.* ("[W]hether a plaintiff ultimately recovers the damages he seeks is a question better left to the applicable substantive law rather than a standing inquiry under Article III.") (citation and quotations omitted).

### B. The Settlement Class Continues to Merit Certification

A threshold inquiry at final approval is whether the Class satisfies the requirements of Rule 23(a) and (b). *In re Cap. One Consumer Data Sec. Breach Litig.* (E.D. Va. Sept. 13, 2022) 2022 WL 18107626 at *4; *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1019–22.

---

[2] Because Article III standing exists for the implied contract claims, the Court need not reach the standing question with respect to the other claims.

The Court completed this first step in the settlement approval process when it granted

preliminary approval and provisionally certified the Settlement Class. ECF 50. Here, the Court

already found that "it will likely be able to certify the Settlement Class for purposes of judgment

on the settlement because it meets all of the requirements of Fed. R. Civ. P. 23(a) and the

requirements of Fed. R. Civ. P. 23(b)(3)." *Id*. at 2. The Court's Preliminary Approval Order

made specific findings that the Class met each of the four Rule 23(a) requirements of

numerosity, commonality, typicality, and adequacy. *Id*. Plaintiffs respectfully submit that

nothing has changed since these findings were made, and that these findings remain accurate.

Because no relevant facts have changed since the Court certified the Settlement Class, ECF 63,

the Court need not revisit class certification here. *See, e.g.*, *In re Cap. One*, 2022 WL 18107626,

at *4; *Scientific Games*, No. 18-cv-525, ECF 197 (W.D. Wash. Aug. 12, 2022).

### C. The Court Should Grant Final Approval of the Settlement.

Pursuant to Fed. R. Civ. P. 23 (e)(2), the Court can approve the Settlement only if it finds

that the Settlement is "fair, reasonable, and adequate".[3] After Plaintiffs submitted extensive

briefing, the Court weighed the various Rule 23 and common law factors regarding the fairness

and adequacy of the Settlement and ultimately granted Preliminary Approval on May 13, 2024.

ECF 50. Nothing has changed since that Order that could alter the Court's initial determination.

*In re Cap. One*, 2022 WL 18107626, at *4 (where details of settlement agreement remained the

same and response of the class was overwhelmingly positive, court held that "[n]othing has

occurred that would alter the Court's initial determination that the Settlement is fair, reasonable,

---

[3] Court also considers the four factors set forth by the Fourth Circuit in Jiffy Lube: "(1) the posture
of the case at the time settlement was proposed; (2) the extent of discovery that had been
conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel."
*In re Jiffy Lube Securities Litigation* (4th Cir. 1991) 927 F.2d 155, 158-59. The Settlement satisfies
these traditional factors.

and adequate."). The relief offered to Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C). Settlement Class Members are entitled to benefits to be paid from a $725,000 non-reversionary Settlement Fund that are tailored to the relief sought through the litigation: recovery of up to $5,000 in Out-of-Pocket Losses and for Lost Time spent dealing with the Data Breach, alternative cash payments, and two years of Identity Defense Services to help detect and remediate potential identity theft and fraud. Moreover, the overall value of the Settlement is well within the range of data breach class action settlements approved across the country. ECF 43-1, Mason Decl., ¶ 20.

Class Counsel, a group with an extraordinary level of experience in leading data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. Declaration of Scott Edward Cole ("Cole Decl."), ¶¶ 17–20. The Court may rely upon such experienced counsel's judgment. *Nelson v. Mead Johnson & Johnson Co.* (11th Cir. 2012) 484 F. App'x 429, 434 ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (quotation omitted).

### D. The Court-Ordered Notice Program is Constitutionally Sound and Has Been Fully Implemented

To protect absent Class Members' rights, the parties must provide the Class with the best notice practicable, but due process does not require actual notice to parties who cannot reasonably be identified. *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797. The Settlement Administrator mailed the Notice Package to the entire Class on April 12, 2024. The Notice Plan has been successfully implemented and reached approximately 98% of the Settlement Class by the individual notice efforts alone. Leung Decl., ¶ 5.

By having reached approximately 98% percent of the identified Settlement Class Members, the Notice Plan as implemented easily meets the requirements of Rule 23 and due process. *See,*

*e.g.*, Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class). Thus, the Court should find that the Class received the best notice practicable under the circumstances in compliance with Rule 23 and the Due Process Clause. *See, e.g.*, *Phillips Petroleum Co.*, 472 U.S. at 811-12.

### E. The Requested Attorneys' Fees and Expenses are Reasonable

Plaintiffs filed a Motion for an Award of Attorneys' Fees and Reimbursement of Expenses on June 7, 2024. ECF 51. Plaintiffs seek an award of $241,666.67 in Attorneys' Fees and reasonable litigation expenses of $19,703.76. This request is the result of a stipulation between the parties, negotiated after the parties had reached agreement on all material terms of the settlement. The requested fee award here is approximately 33.33% of the Settlement's total value. This fee is more than reasonable when considering the actual time and expense of Class Counsel in this case, the risks taken, *etc*. *See* ECF 51-2 at 10-19; *Kruger v. Novant Health, Inc.* (M.D.N.C. Sept. 29, 2016) 2016 WL 6769066, No. 1:14CV208, at *7 (noting that a "one-third fee is consistent with the market rate" in ERISA class action); *Scott v. Fam. Dollar Stores, Inc.* (W.D.N.C. Mar. 14, 2018) 2018 WL 1321048 No. 308CV00540MOCDSC at *15 (awarding one-third of the settlement fund plus reimbursement of costs); *Brown v. Lowe's Companies, Inc.* (W.D.N.C. Nov. 1, 2016) 2016 WL 6496447 No. 513CV00079RLVDSC at *11 (finding a one-third attorneys' fee reasonable in light of the results obtained, is consistent with Fourth Circuit precedent).

### F. The Proposed Service Awards are Reasonable

The Settlement further provides for, and Representative Plaintiffs now request, a service award of $5,000 each. Service awards to Representative Plaintiffs in class action litigation are commonplace and are "intended to compensate class representatives for work done on behalf of

the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." They are "fairly typical in class action cases." *Berry v. Schulman* (4th Cir. 2015) 807 F.3d 600, 613 (internal citations omitted).

The proposed Service Awards are reasonable given the work Representative Plaintiffs performed on behalf of fellow Class Members, the risks they faced and continue to face for participation in the litigation, and the minimal impact the request will have on the amount of any other Class Member's level of recovery. As detailed in Representative Plaintiffs' Declarations, submitted herewith, Representative Plaintiffs initiated this action, took risks and devoted considerable time thereto. *See* Declaration of Plaintiff Tyler Beadle; Declaration of Plaintiff April Darrin; Declaration of Plaintiff Kenneth D. Keeler; Declaration of Plaintiff Bruce Snyder; and Declaration of Plaintiff Cheryl Soles.

## IV.    CONCLUSION

For all of these reasons, Plaintiffs respectfully request the Court grant Final Approval of the class action settlement, as well as their request for Service Awards and Attorneys' Fees and costs.

Dated: August 22, 2024                          Respectfully submitted,

/s/ *David Hilton Wise*
David Hilton Wise (VA Bar No. 30828)
William N. Evans (VA Bar No. 87506)
**WISE LAW FIRM PLC**
10640 Page Avenue, Suite 320
Fairfax, Virginia 22030
Telephone: 703-934-6377
Email: dwise@wiselaw.pro
Email: wevans@wiselaw.pro

Scott Edward Cole
(admitted *Pro Hac Vice*)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, CA 94607
Telephone: (510) 891-9800
Email: sec@colevannote.com

Gary E. Mason
(admitted *Pro Hac Vice*)
**MASON LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Telephone: (202) 429-2290
Email: gmason@masonllp.com

Raina Borrelli
(admitted *Pro Hac Vice*)
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Email: raina@turkestrauss.com

Kenneth J. Grunfeld
**GOLOMB SPIRT GRUNFELD P.C.**
1835 Market Street, Suite 2900
Philadelphia, Pennsylvania 19103
Telephone: (215) 346-7338
Email: KGrunfeld@GolombLegal.com

Steven T. Webster, VA Bar No. 31975
**WEBSTER BOOK LLP**
300 N. Washington Street, Suite 404 Alexandria,
Virginia 22314
Telephone: (888) 987-9991
Email: swebster@websterbook.com

*Counsel for Plaintiffs and the Settlement Class*

11

## **CERTIFICATE OF SERCIVE**

I, David Hilton Wise, hereby certify that on August 22, 2024, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to all counsel of record via the ECF system.

DATED this 22nd day of August, 2024

WISE LAW FIRM PLC

By: */s/* David Hilton Wise
David Hilton Wise, VA Bar No. 30828
WISE LAW FIRM PLC
10640 Page Avenue, Suite 320
Fairfax, Virginia 22030
Telephone: 703-934-6377
dwise@wiselaw.pro

12